UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSUE ROMERO, on behalf of : Civil Case No.: 1:20-cv-10189 (LJL)
himself and all others similarly situated, :
 :
           Plaintiff, :
 :
   vs. : ORAL ARGUMENT REQUESTED
 :
ZIP TOP, LLC, 
 :
           Defendant, :
 :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

                                                                              **Pages**

I. PRELIMINARY STATEMENT ………………………………………….1

II. STATEMENT OF FACTS…………………………………………….2

III. LEGAL STANDARDS……………………………………………..5

    A. Standards When Evaluating a Fed. R. Civ. P. 56 Motion ………...…..5

    B. Standards For Determining a Violation of the ADA ……………...…..6

    C. Websites Are Places of Public Accommodation
       Subject to the ADA …………...….…………....…………….....…6

    D. Websites Delay and Inability to Use a Commercial
       Website Constitute Discrimination Under the ADA...…………….....…7

IV. ARGUMENT……………………………………………………...8

    A. Defendant's Website is Subject to the AD…………...………….....…8

    B. Defendant's Website Discriminates Against Plaintiff. ……………....….9

V. CONCLUSION……………………………….....…....…………….....…12

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AmTrust N. Am., Inc. v. KF&B, Inc.*, 17-cv-5340 (LJL),
2020 U.S. Dist. LEXIS 167679 (S.D.N.Y. Sept. 14, 2020)5 ..............................................5

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. 2017) ..................................................................................8

*Calcano v. Cole Haan LLC*,19 Civ. 10440 (AT),
 2021 U.S. Dist. LEXIS 41734 (S.D.N.Y. Mar. 5, 2021). .....................................................8

*Camacho v Vanderbilt Univ.*, 18 Civ. 10694,
2019 U.S. Dist. LEXIS 209202 (Dec. 4. 2019) ....................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..............................................................................................................5

*Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE),
2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) ..............................................6, 9

*Hernandez v. New York State Bd. Of Elections*,
479, F. Supp. 3d 1 (S.D.N.Y. 2020)6 ...................................................................................6

*Jaquez v. Dermpoint*, 20-CV-7589 (JPO),
2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021) .............................................7, 10

*Keawsri v. Ramen-Ya Inc.*, 17-cv-2406 (LJL),
 2021 U.S. Dist. LEXIS 150399 (S.D.N.Y. Aug. 10, 2021)..................................................6

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)5 ............................................................................................................5

*Pallozzi v. Allstate Life Ins, Co.*,
198 F.3d 28 (2d Cir. 1999) ................................................................................................... 8

*Thorne v. Boston Mkt. Corp.*,
469 F. Supp 3d 130 (S.D.N.Y. 2020) ..................................................................................9

*Thorne v. Formula 1 Motorsports, Inc.*, 19-CV-1077 (JP0),
2019 U.S. Dist. LEXIS 220080 (S.D.N.Y Dec. 19, 2019) ............................................7, 10

*Virga v Big Apple Constr. & Restoration Inc.*,
590 F. Supp. 2d 467 (S.D.N.Y. 2008)6 ...................................................................................6

*Wu v. Jensen-Lewis Co.*,
345 F. Supp. 3d 438 (S.D.N.Y. 2018) .....................................................................................7

**Statutes**

42 U.S.C. § 12181 *et seq.* .................................................................................*passim*

**Rules**

Fed. R. Civ. P. 36(a) ..........................................................................................1, 2

Fed. R. Civ. P. 56 ...............................................................................................*passim*

28 C.F.R. § 35 App. A (2010) .................................................................................9

Plaintiff Josue Romero ("Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Motion for Summary Judgment ("Motion for Summary Judgment").

I. **PRELIMINARY STATEMENT**

This action is the result of Defendant's failure to design its commercial website in a way so that both sighted and unsighted persons nationwide can equally access it to conduct business. Defendant owns and operates the commercial website www.ziptop.com ("Website"), which allows the online purchase and delivery of goods throughout the United States, including New York City. Plaintiff, a blind resident of the Bronx, accessed Defendant's Website in order to complete a purchase. However, unlike other New Yorkers and visually impaired persons nationwide, he could not transact business because of his disability.

The record before the Court shows three undisputable facts:

(1) Plaintiff is a blind man, and therefore a protected class of citizen under the Americans with Disabilities Act ("ADA");

(2) Defendant owns and operates an interactive, commercial website that, per this Court's own decisions, is subject to the provisions of the ADA; and

(3) Defendant's Website was designed in such a way that Plaintiff encountered barriers that sighted New Yorkers would not face, denying him the ability to complete a purchase because of his disability.

Defendant cannot dispute these facts. Notably, Defendant has admitted that its Website was discriminatory.[1] These admitted facts concerning the discriminatory condition of the Website are further supported not only by Plaintiff's experience in trying to use the Website but also by

---

[1] Plaintiff's Requests for Admission asked Defendant to admit that its website was not accessible to visually impaired people. Defendant failed to provide any response to these Requests and thus has admitted them pursuant to Fed. R. Civ. Proc. 36(a)(3).

1

two expert reports, one which examined the website before Plaintiff filed his complaint, and one which examined the website less than a week before Plaintiff filed this motion. Plaintiff has thus established that the website was discriminatory and in violation of the American's with Disabilities Act of 1990 ("ADA") and the New York City Human Rights Law ("NYCHRL") .

For these reasons, Plaintiff's motion for summary judgment should be granted.

## II. STATEMENT OF FACTS

Plaintiff lives within the Southern District of New York, is completely blind and, in 2017, received a verification of Legal Blindness from the New York State Commission for the Blind. Declaration of Josue Romero ("Romero Decl.") at ¶¶1, 3.[2] For years, Plaintiff has had a computer with screen reading software installed for browsing the Internet. Romero Decl. at ¶5.

Before he filed this lawsuit on December 3, 2020 (ECF No. 1), Plaintiff visited the website. Romero Decl. at ¶4. Defendant Zip Top LLC ("Defendant") owns and operates the Website. Exhibit ("Ex.") A to the Declaration of William Downes ("Downes Decl.") at RFA No. 1; Downes Decl. ¶2.[3] Defendant's Website allows access to its goods and services to consumers throughout the United States, including New York. Ex. A, at RFA No. 2; Romero Decl. at ¶4. When Plaintiff visited Defendant's Website, he was unable to complete a purchase there due to technical errors that blocked access to his screen reading software. Romero Decl. at ¶4.

**Defendant admits that its Website is inaccessible to visually-impaired persons.** Ex. A, at RFA No. 9. A search of Defendant's Website, performed by forensic computer expert Robert

---

[2] ECF No. 25-1.
[3] Pursuant to the Court's Case Management Plan and Scheduling Order (ECF No. 17, at p.3), Plaintiff served his First Request for Admission on Defendant Zip Top LLC ("Defendant") on July 19, 2021 ("RFAs"). Downes Decl. at ¶2 As of the filing of this Motion, Defendant has provided no response, whatsoever, to Plaintiff's RFAs (Id. at ¶3) and thus has admitted them. *See* Fed. R. Civ. P. 36(a)(3).

D. Moody before this lawsuit was filed, confirmed that Defendant's Website contained a number of issues that act as barriers to individuals with low to no vision. Declaration of Robert D. Moody ("Moody Decl.") at ¶¶1, 6, 8. These barriers included the fact that:

- Elements of the Website, including text that describes the product or purpose of the Website, were not labeled to integrate with screen reading software. Moody Decl. at ¶8d. As a result, individuals using screen reading software lose out on information that a person with normal vision can see and read for themselves. *Id*;

- Color options of products listed for sale on the Website were not accessible to those using screen reading software, so that someone using such software would mistakenly believe that the products only came in one color. *Id*. at ¶8b;

- Elements such as the "Contact Us" feature was not labeled—and only appeared as an email address—so that someone using screen reading software would not know the department to which the email address corresponds. *Id*. at ¶8c; and

- The feature on the Website that was designed to take users back to the Website's homepage was not labeled and did not work properly with screen reading software—so that the feature was effectively hidden from individuals using such software. *Id*. at ¶8a.

Defendant admits that, during the pendency of this lawsuit, the Website continued to have a number of barriers to accessibility. In particular, Defendant admits:

- Both as of the date this lawsuit was filed on December 3, 2020 (ECF No. 1) and as of July 2021 (when Plaintiff served his RFAs on Defendant), Defendant's Website was not WCAG 2.1 compatible. Ex. A at RFA Nos. 3, 4.

- As recently as July 2021, Defendant's Website lacked "alt text", a label element, and attribute fields. Ex. A, at RFA Nos. 5, 6; and

- As recently as July 2021, Defendant's Website coding contained duplicate title elements and hyperlinks to empty or non-existent webpages. Ex. A, at RFA No. 7.

Defendant also admits that, despite being served with this lawsuit, Defendant still has no corporate policy regarding the operation and maintenance of its Website in a reasonably accessible manner for visually impaired persons. Ex. A, at RFA No. 10. Defendant further admits it has no plans to make its Website equally accessible to blind or other visually impaired persons in the future. *Id*., at RFA No. 12. Defendant has made these admissions despite the fact that it modifies features of its website on a daily, or evenly hourly, basis. *Id*., at RFA No. 11.

Further, Defendant admits that, at least as recently as July 2021, it had invested sums in the development and maintenance of the Website that were much greater than the cost of making the Website equally accessible to blind and other visually impaired persons. Ex. A, at RFA No. 13. And Defendant admits that, at least as recently as July 2021, it had generated significant revenues from the Website that were much greater than the cost of making the Website equally accessible to blind and other visually impaired persons. *Id*., at RFA No. 14.

Unfortunately, Defendant has still not remedied the barriers its Website presents to the visually disabled. As recently as October 7, 2021 (i.e., just days before the filing of the instant motion), Defendant's Website continued to suffer from various defects that ***"can and will continue to create problems for visually disabled persons, such as the Plaintiff and these defects act as a barrier to the effective use and enjoyment of the site for persons with low to no vision."*** October 7, 2021, Declaration of Robert D. Moody ("Supp. Moody Decl.") at ¶¶ 7, 14. These problems include:

4

- Website text which is not labeled to integrate with screen reading software such that a visually impaired user cannot find out information concerning a product's price, dimensions, features, or other information (Moody Supp. Decl. at ¶¶8b, 8c);

- Integration issues which add products to a user's cart without informing the user of such additions, which can cause a visually impaired user to unknowingly more products than desired (Moody Supp. Decl. at ¶8d);

- Integration issues that prevent a visually impaired user from reviewing key information regarding items in his or her cart—such as the product's prices and subtotals (*Id*. at ¶8e); and

- Integration issues which disguise promotional information, such as free shipping on products listed for sale, from visually impaired users. *Id*. at ¶8a.

### III. LEGAL STANDARDS

#### A. STANDARDS WHEN EVALUATING A FED. R. CIV. P. 56 MOTION

As this Court has noted, Federal Rule of Civil Procedure 56(a) provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *AmTrust N. Am., Inc. v. KF&B, Inc.*, 17-cv-5340 (LJL), 2020 U.S. Dist. LEXIS 167679, at *3-*4 (S.D.N.Y. Sept. 14, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material fact. *Id*. at *4 (citing *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As this Court further notes, Federal Rule of Civil Procedure 36(a)(3) provides that "a matter is admitted unless within 30 days after being served, the party to who the request is directed served

5

on the requesting part a written answer or object addressed to the matter and signed by the party or its attorney." *Keawsri v. Ramen-Ya Inc.*, 17-cv-2406 (LJL), 2021 U.S. Dist. LEXIS 150399, *10-*11(S.D.N.Y. Aug. 10, 2021). Matters admitted under rule 36(a) may be used for summary judgment under rule 56. *Id*. at *11 (*quoting Virga v Big Apple Constr. & Restoration Inc.*, 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008)).

### B. STANDARDS FOR DETERMINING A VIOLATION OF THE ADA

As this Court has noted, "[i]n order to establish a violation under the ADA, the plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Hernandez v. New York State Bd. Of Elections*, 479, F. Supp. 3d 1, 20-21 (S.D.N.Y. 2020).

### C. WEBSITES ARE PLACES OF PUBLIC ACCOMODATION SUBJECT TO THE ADA

It is well-established in the Southern District of New York that "[a] commercial website itself qualifies as a place of "public accommodation" to which Title III of the ADA affords a right of equal access." *Del-Orden v. Bonobos, Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *19 (S.D.N.Y. Dec. 20, 2017). This flows logically from the precedent of the Second Circuit, which has stated that the Title III's mandate ensures "full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] more than mere physical access." *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999). As Judge Oetken recently reaffirmed in the case of *Jaquez v. Dermpoint*.

> In *Pallozzi*'s wake, multiple district courts in this circuit — including this one — have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store. *See Thorne*, 2019 U.S. Dist. LEXIS 220080, 2019 WL 6916098, at *2; *see also Del-Orden*, 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at *5, (holding that the term "public accommodation" in Title III extends to private commercial websites, and noting that "the four district courts in this Circuit to address the issue have each held ... that Title III extends to online fora offering goods and services"). The Court sees no reason to depart from its holding in *Thorne*.

*Jaquez,* 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *7-*8 (S.D.N.Y. May 20, 2021).

### D. DELAY AND INABILITY TO USE A COMMERCIAL WEBSITE CONSTITUTE DISCRIMINATION UNDER THE ADA.

Inability to access specific functions and deficient pages that directly prevent a plaintiff from completing a purchase in a manner which would otherwise be available to sighted individuals constitutes a discriminatory injury under the ADA. As Judge Oetken recently held, a website which fails to provide alternative text for images, uses empty links containing no text, and uses redundant adjacent links demonstrate that that Website denies a plaintiff a full and equal opportunity to use its website. *Thorne v. Formula 1 Motorsports, Inc.*, 19-CV-1077 (JP0), 2019 U.S. Dist. LEXIS 220080, *6 (S.D.N.Y Dec. 19, 2019) (citing *Wu v. Jensen-Lewis Co.*, 345 F. Supp 3d 438, 443 (S.D.N.Y 2018)). Similarly, Judge Failla held that a Plaintiff suffered a discriminatory injury under the ADA when:

> [H]e was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. ⋯ Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. ⋯ The Second Circuit has made clear that "deterrence constitutes an injury under the ADA."

*Camacho v. Vanderbilt Univ*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019).

Thus, it is clear inaccessible website functions constitute an injury in violation of the ADA.

IV. **ARGUMENT**

There is no dispute in this case that Plaintiff is a blind man and therefore a member of a protected class under the ADA. *See* Romero Declaration at ¶1; 42 U.S.C. § 1202(1)-(2); 28 CFR §§ 36.101 *et seq*. Therefore, this case revolves around two critical issues: (1) is Defendant's website subject to the ADA; and (2) did Defendant's Website discriminate against Plaintiff and other blind persons.

A. **DEFENDANT'S WEBSITE IS SUBJECT TO THE ADA**

The precedents established by this Court's honorable colleagues are clear and unequivocal: Websites are places of public accommodation under the ADA *per se*. This follows from the Second Circuit's position, which held that the ADA itself implies that the statute was meant to guarantee more than mere physical access. *See Pallozzi v Allstate Life Ins, Co.,*, 198 F.3d 28, 32 (2d Cir. 1999). Based on this reasoning, courts in this district and throughout this circuit have emphasized that it is the sale of goods and services to the public, and not the location, physical or otherwise, where sale is executed, that determines whether the protections of the ADA apply. *See e.g., Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 392 (E.D.N.Y. 2017). Courts in this district recently took note of this well-established line of decisions. *Calcano v. Cole Haan LLC*, 19-Civ-10440 (AT), 2021 U.S. Dist. LEXIS 41734, at *10 (S.D.N.Y. Mar. 5, 2021).

This has been affirmed again and again in this district, as this Court itself has recognized, "Although the Second Circuit has yet to rule on this issue, a number of courts in this district have held that private commercial websites that affect commerce are places of public accommodation

8

under the ADA." *Thorne v. Boston Mkt. Corp.*, 469 F. Supp 3d 130, 141, (S.D.N.Y. 2020). Following this set of principles, Judge Englemeyer ruled unequivocally that "[a] commercial website itself qualifies as a place of 'public accommodation to which Title III of the ADA affords a right of equal access.'" *Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *20.

This reading is in turn supported by the Department of Justice of the United States, which has indirectly indicated that the ADA should cover websites. In guidance found in 28 C.F.R. § 35 app. A (2010), the DOJ notes the following:

> "Although the language of the ADA does not explicitly mention the Internet, the Department has taken the position that Title II covers Internet Web site access. Public entities that choose to provide services through web-based applications . . . or that communicate with their constituents or provide information through the Internet must ensure that individuals with disabilities have equal access to such services or information."

The law of the Southern District is thus unambiguous: the ADA covers websites in and of themselves as places of public accommodation.

There is no material issue in the record that the Website Plaintiff visited is owned and operated by Defendant. Ex. A, at RFA No. 1. Nor is it disputed that the Website is commercial in nature. Ex. A, at RFA No. 1. As such, it is clear that Defendant operates a place of public accommodation covered by the ADA.

B.  **DEFENDANT'S WEBSITE DISCRIMINATES AGAINST PLAINTIFF**

Two pieces of undisputed evidence demonstrate that Defendant's Website unlawfully discriminated against Plaintiff: those facts admitted by Defendant, and the Reports of Robert Moody, a computer forensic expert.

**Defendant admits that its Website is inaccessible to visually-impaired persons.** Ex. A, at RFA No. 9. It is thus unsurprising that, when Plaintiff visited the Website, he was unable to

9

complete a purchase there due to technical errors that blocked access to his screen reading software. Romero Decl. at ¶4. This evidence alone is sufficient to establish discrimination against Plaintiff.

Plaintiff, however, also presents detailed evidence concerning the Website's barriers to use by visually impaired people. A website's deficiencies that impede a blind or visually-impaired user's ability to shop there have been recognized as constituting injury under the ADA. *See Jaquez*, 2021 U.S. Dist. LEXIS, 96067 at *9. A website which fails to provide alternative text for images, uses empty links containing no text, and uses redundant adjacent links demonstrate that the website denies a plaintiff a full and equal opportunity to use it. *See Thorne*, 2019 U.S. Dist. LEXIS 220080, at *6. Similarly, website content that is incompatible with screen-reading software and the inability to use a website's features that are available to sighted individuals deter visually impaired individuals from using the website and such deterrence constitutes injury under the ADA. *Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019). Here, Defendant admits that its Website is not compatible with screen reading software (Ex. A at RFA Nos. 3, 4); its Website does not contain alternative text for images (*Id*. at RFA No. 5); uses empty links (*Id*. at RFA No. 8); and its Website uses duplicate title elements. *Id*. at RFA No. 7.

Moreover, as detailed above, Robert D. Moody's October 2020 forensic examination of the website confirmed the issues admitted by Defendant: that the website contained various issues which "are a barrier to individuals with low to no vision." Moody Decl. at ¶7. These issues included text on the Website that is "not labeled to integrate with a screen reader causing the user to lose out on information that a person with normal vision can see and read for themselves." Moody Decl. at ¶8d. These issues also included the fact that individuals using screen reading software would

10

not know that the products listed for sale on the Website came in more than one color (Moody Decl. at ¶8b); the inability of those individuals to use the Website's links (Moody Decl. at ¶8a); and the inability of those individuals to use "Contact Us" features to get assistance from the Website's operator. Moody Decl. at ¶8c. These findings by Mr. Moody and Defendant's admissions establish that there is no issue of material fact: Plaintiff was denied a full and fair opportunity to use the Website and suffered injury under the ADA.

This is further compounded by additional evidence that, unfortunately, Defendant's discrimination against Plaintiff and other visually impaired individuals continues. As established by Mr. Moody's *Supplemental* Declaration, as of October 7, 2021, Defendant's Website continues to contain various issues which "are a barrier to individuals with low to no vision." Moody Supp. Decl. at ¶7. As noted above, these include Website text that is not integrated with screen reading software such that visually impaired users:

- Cannot find out information concerning a product's price, dimensions, features, or other information (Moody Supp. Decl. at ¶¶8b, 8c);
- Have items added to their carts without being notified of such additions (Moody Supp. Decl. at ¶8d);
- Are prevented from reviewing key information—such as the product's prices and item subtotals—about items in the user's cart (*Id*. at ¶8e); and
- Are not presented with promotional information concerning products listed for sale, such as offers of free shipping. Id. at ¶8a.

Plaintiff has thus presented evidence that Defendant's discrimination is ongoing and that there is no issue of material fact as to whether Defendant's website continues to discriminate under

the ADA. Considering the above evidence, it is undisputed that Defendant's Website discriminated against Plaintiff and continues to discriminate against him and other visually impaired persons.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court should respectfully grant Plaintiff's Motion for Summary Judgment.

Dated: October 12, 2021

**COHEN & MIZRAHI LLP**

By: <u>*/s/ William Downes*</u>
William J. Downes
Cohen & Mizrahi LLP
300 Cadman Plaza W, 12th Floor
Brooklyn, New York 11201
Tel: 929-575-4175
Fax: 929-575-4195
Email: wdownes@cmlattorneys.com

*Attorneys for Plaintiff*